**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT GIACOMO, Individually and for Others Similarly Situated <br><br> v. <br><br> BOTTLING GROUP, LLC d/b/a PEPSICO BEVERAGES COMPANY | **Case No.** _____ <br><br> Jury Trial Demanded <br><br> Rule 23 Class Action <br> FLSA Collective Action |

**ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT**

SUMMARY

1.      Scott Giacomo ("Giacomo") brings this class and collective action to recover unpaid wages and other damages from Bottling Group, LLC d/b/a PepsiCo Beverages Company ("PepsiCo").

2.      PepsiCo employs Giacomo as one of its Hourly Service Technicians (defined below) in Illinois.

3.      Like the other Hourly Service Technicians, Giacomo regularly works more than 40 hours in a workweek.

4.      But PepsiCo does not pay Giacomo and its other Hourly Service Technicians for all the hours they work.

5.      Instead, PepsiCo requires Giacomo and the other Hourly Service Technicians to work significant time "off the clock" without pay.

6.      Specifically, PepsiCo prohibits Giacomo and the other Hourly Service Technicians from clocking in for their shifts until they arrive at their first assigned client; and PepsiCo requires

Giacomo and the other Hourly Service Technicians to clock out for their shifts when they leave their last assigned client (PepsiCo's "client to client policy").[1]

7.     But PepsiCo requires Giacomo and the other Hourly Service Technicians to complete mandatory vehicle inspections "off the clock" before driving to their first assigned client and after driving home (or to their designated PepsiCo facility) from their last assigned client.

8.     Giacomo and the Hourly Service Technicians are thus not paid for the time they spend performing these mandatory pre- and post-shift vehicle inspections "off the clock."

9.     Nor are they paid for their time spent driving to their first assigned ticket (which, again, occurs *after* they start working when they begin their mandatory pre-shift vehicle inspection), or their time spent driving home (or to their designated PepsiCo facility) from their last assigned ticket (which, again, occurs *before* they stop working when they complete their mandatory EOD vehicle inspection).

10.    PepsiCo's uniform "client to client" policy violates the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL") by depriving Giacomo and the other Hourly Service Technicians of overtime wages for all overtime hours worked.

11.    Likewise, PepsiCo's uniform "client to client" policy violates the Illinois Wage Payment and Collection Act ("IWPCA") by depriving Giacomo and the other Hourly Service Technicians of all their earned wages (at their agreed hourly rates) for all hours worked.

## JURISDICTION & VENUE

12.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

---

[1] Beginning in 2023, PepsiCo changed its uniform policy and began permitting Giacomo and the other Hourly Service Technicians to clock in for their shifts when they actually start working (i.e., when they begin their mandatory pre-shift vehicle inspection prior to driving to their first assigned client). But PepsiCo still does not permit Giacomo and the other Hourly Service Technicians to clock out for their shifts when they actually stop working (i.e., after they drive home from their last assigned client and complete their mandatory EOD vehicle inspection).

13.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.     This Court has general personal jurisdiction over PepsiCo because PepsiCo is headquartered in Purchase, New York; therefore, PepsiCo resides in New York.

15.     Venue is proper because PepsiCo is headquartered in Purchase, New York, which is in this District. 28 U.S.C. § 1391(b)(1).

PARTIES

16.     Giacomo has worked for PepsiCo as a Service Technician in Illinois since approximately January 1987.

17.     Throughout his employment, PepsiCo classified Giacomo as non-exempt and paid him on an hourly basis.

18.     Prior to 2023, PepsiCo subjected Giacomo to its common practice of prohibiting him from clocking in for his shifts until he arrived at his first assigned client.

19.     Throughout his employment, PepsiCo subjected Giacomo to its common practice of requiring him to clock out when he left his last assigned client.

20.     But throughout his employment, PepsiCo required Giacomo to perform compensable work "off the clock" (without pay) before arriving to his first assigned client and after leaving his last assigned client.

21.     Giacomo brings this class and collective action on behalf of himself and other similarly situated hourly, non-exempt PepsiCo Service Technicians who are subject to PepsiCo's "client to client" policy.

22.     Prior to 2023, PepsiCo prohibited each of these Service Technicians from clocking in until they arrived at their first assigned ticket.

23.     And PepsiCo requires each of these Service Technicians to clock out when they leave their last assigned client.

24.     But PepsiCo requires each of these Service Technicians to perform compensable work (e.g., mandatory vehicle inspections and travel to and from clients) "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

25.     Thus, PepsiCo uniformly deprives these Service Technicians of overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock," in violation of the FLSA and IMWL.

26.     Likewise, PepsiCo uniformly deprives these Service Technicians of earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," in violation of the IWPCA.

27.     The FLSA Collective of similarly situated employees is defined as:

> **All hourly Service Technicians who worked for PepsiCo at any time during the past 3 years ("FLSA Collective Members").**

28.     Giacomo also seeks to represent classes under the IMWL and IWPCA pursuant to FED. R. CIV. P. 23.

29.     The IMWL Class of similarly situated employees is defined as:

> **All hourly Service Technicians who worked for PepsiCo in Illinois at any time during the past 3 years ("IMWL Class Members").**

30.     The IWPCA Class of similarly situated employees is defined as:

> **All hourly Service Technicians who worked for PepsiCo in Illinois at any time during the past 10 years ("IWPCA Class Members").**

31.     The FLSA Collective Members, IMWL Class Members, and the IWPCA Class Members are collectively referred to as the "Hourly Service Technicians."

32.     PepsiCo is a Delaware limited liability company headquartered in Purchase, New York.

33.     PepsiCo may be served through its registered agent: **CT Corporation System, 28 Liberty Street, 42nd Floor, New York, New York 10005**.

## FLSA COVERAGE

34.     At all relevant times, PepsiCo was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.     At all relevant times, PepsiCo was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

36.     At all relevant times, PepsiCo was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because PepsiCo, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, vehicles, tools, and personal protective equipment—that have been moved in or produced for commerce.

37.     At all relevant times, PepsiCo has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

38.     At all relevant times, Giacomo and the other Hourly Service Technicians were PepsiCo's covered "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

39.     At all relevant times, Giacomo and the other Hourly Service Technicians were engaged in commerce or in the production of goods for commerce.

40.     Under its uniform "client to client" policy, PepsiCo prohibits Giacomo and the other Hourly Service Technicians from clocking in for their shifts until they arrive at their first assigned client and requires these employees to clock out for their shifts when they leave their last assigned client.

5

41.     But PepsiCo also uniformly requires Giacomo and the other Hourly Service Technicians to perform compensable work (e.g., mandatory vehicle inspections and travel to and from clients) "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

42.     As a result, PepsiCo fails to pay Giacomo and its other Hourly Service Technicians wages (including overtime) for the compensable work they perform "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

43.     PepsiCo's "client to client" policy, therefore, violates the FLSA by depriving Giacomo and the other Hourly Service Technicians of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

FACTS

44.     PepsiCo manufactures, distributes, and sells non-alcoholic beverages for Pepsi (and affiliated brands) across the country, including in Illinois.

45.     To meet its business objectives, PepsiCo hires Service Technicians (including Giacomo and the other Hourly Service Technicians) to service refrigeration units, ice units, fountain machines, and other vending machines for its clients who sell Pepsi (and affiliated brands') beverages.

46.     PepsiCo uniformly classifies Giacomo and its other Hourly Service Technicians as non-exempt and pays them on an hourly basis.

47.     Giacomo and the other Hourly Service Technicians regularly work more than 40 hours a week.

48.     But PepsiCo does not pay Giacomo and its other Hourly Service Technicians for all their hours worked.

49.     Instead, PepsiCo uniformly subjects Giacomo and its other Hourly Service Technicians to its illegal "client to client" policy and forces these employees to perform compensable work "off the clock" before and after clocking in and out for their shifts.

50.     While exact job duties and precise locations may differ, Giacomo and the other Hourly Service Technicians are subject to PepsiCo's same or similar illegal policy—PepsiCo's "client to client" policy—for similar work.

51.     For example, Giacomo has worked for PepsiCo as a Service Technician in Illinois since approximately January 1987.

52.     Giacomo is PepsiCo's hourly employee.

53.     Specifically, PepsiCo agreed to pay Giacomo $30.75/hour for his first 40 hours worked in a week and $46.13/hour for his hours worked over 40 in a week.

54.     As a Service Technician, Giacomo's primary responsibilities include installing, setting up, repairing, and providing other maintenance services on Pepsi vending, cooling, refrigeration, ice, and fountain equipment for PepsiCo's customers.

55.     Throughout his employment, PepsiCo required Giacomo to record his work time through its uniform timekeeping system.

56.     Throughout his employment, Giacomo regularly worked more than 40 hours a week.

57.     Indeed, Giacomo typically works 10 to 12 hours a day for 4 to 5 days a week (or 40 to 60 hours a week).

58.     But throughout his employment, PepsiCo subjected Giacomo to its illegal "client to client" policy.

59.     Specifically, prior to 2023, PepsiCo prohibited Giacomo from clocking in for his shifts until he arrived at his first assigned client.

60.     And throughout his employment, PepsiCo required Giacomo to clock out when he left his last assigned client.

61.     But throughout his employment, PepsiCo also required Giacomo to perform compensable work "off the clock" (without pay) before arriving to his first assigned client and after leaving his last assigned client.

62.     Namely, PepsiCo requires Giacomo to complete mandatory vehicle inspections on his company-issued truck "off the clock" before driving to his first assigned client and, again, once he drives home from his last assigned client.

63.     Each "off the clock" vehicle inspection takes Giacomo approximately 15 minutes to complete (or approximately 2 to 2.5 hours a week).

64.     Further, Giacomo's "off the clock" travel time to his first assigned client and from his last assigned client takes approximately 1 to 2 hours a day (or 4 to 10 hours a week).

65.     But under PepsiCo's illegal "client to client" policy, PepsiCo does not pay Giacomo for this mandatory and necessary compensable pre- and post-shift "off the clock" work.

66.     So, rather than receiving earned wages and overtime for all his hours worked, PepsiCo only pays Giacomo for the time he works between his arrival at his first assigned client and his departure from his last assigned client in violation of the FLSA, IMWL, and IWPCA.

67.     PepsiCo subjects its other Hourly Service Technicians according to the same illegal "client to client" policy it imposes on Giacomo.

68.     Like Giacomo, PepsiCo pays its other Hourly Service Technicians on an hourly basis.

69.     Like Giacomo, PepsiCo requires its other Hourly Service Technicians to report their hours worked to PepsiCo through its uniform timekeeping system.

70.     PepsiCo's records show that, like Giacomo, the other Hourly Service Technicians regularly work more than 40 hours a week.

71.     Indeed, like Giacomo, the other Hourly Service Technicians typically work 10 to 12 hours a day for 4 to 5 days a week (or 40 to 60 hours a week).

72.     But like Giacomo, PepsiCo does not pay its other Hourly Service Technicians for all their hours worked.

73.     Rather, like Giacomo, prior to 2023, PepsiCo prohibited its other Hourly Service Technicians from clocking in for their shifts until they arrived at their first assigned client.

74.     And like Giacomo, PepsiCo requires its other Hourly Service Technicians to clock out when they leave their last assigned client.

75.     But like Giacomo, PepsiCo also requires its other Hourly Service Technicians to perform compensable work "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

76.     Specifically, like Giacomo, PepsiCo requires its other Hourly Service Technicians to perform mandatory vehicle inspections on their company-issued trucks "off the clock" before driving to their first assigned client and, again, once they return home (or to their assigned PepsiCo facility) after their last assigned client.

77.     The pre- and post-shift vehicle inspections PepsiCo requires Giacomo and the other Hourly Service Technicians to perform adhere to the Department of Transportation's ("DOT") requirements and include walking around the vehicle and conducting a visual inspection, checking the undercarriage, checking the brakes, checking the oil, checking the tires, checking all mirrors, and ensuring the lights and horn function properly.

78.     Like Giacomo, the other Hourly Service Technicians typically spend 15 minutes to complete each inspection (or approximately 2 to 2.5 hours a week), all of which is "off the clock" and unpaid.

79.     And like Giacomo, the other Hourly Service Technicians spend approximately 1 to 2 hours a day (or 4 to 10 hours a week) driving from their homes (or assigned PepsiCo facilities) to their first assigned client and from their last assigned client back to their homes (or assigned PepsiCo facilities), all of which is "off the clock" and unpaid.

80.     PepsiCo controls Giacomo's and the other Hourly Service Technicians' pre- and post-shift vehicle inspections, and these inspections are undertaken primarily for the benefit of PepsiCo's beverage service business.

81.     Likewise, PepsiCo controls Giacomo's and the other Hourly Service Technicians' pre- and post-shift travel time to and from clients, and their pre- and post-shift travel time to and from clients is undertaken primarily for the benefit of PepsiCo's beverage service business.

82.     Further, the mandatory pre- and post-shift "off the clock" vehicle inspections and travel time are necessary to the principal work Giacomo and the other Hourly Service Technicians perform.

83.     Indeed, PepsiCo requires Giacomo and the other Hourly Service Technicians to perform these mandatory pre- and post-shift vehicle inspections to ensure they are able to safely drive their assigned routes to service PepsiCo's clients.

84.     And Giacomo and the other Hourly Service Technicians cannot service PepsiCo's clients unless they drive to and from PepsiCo's clients' locations (where the Pepsi equipment they are assigned to service is located).

85.     In other words, Giacomo's and the other Hourly Service Technicians' mandatory pre- and post-shift "off the clock" work is a fundamental requirement of their jobs as PepsiCo Service Technicians.

86.     Indeed, PepsiCo could not eliminate this pre- and post-shift "off the clock" work altogether without impairing Giacomo's and the Hourly Service Technicians' ability to perform their work.

87.     Rather, this mandatory pre- and post-shift "off the clock" work is integral and indispensable to Giacomo's and the Hourly Service Technicians' work as PepsiCo Service Technicians.

88.     Thus, Giacomo and the other Hourly Service Technicians routinely perform this mandatory pre- and post-shift "off the clock" work for PepsiCo's—not their own—predominant benefit.

89.     And PepsiCo knows Giacomo and its other Hourly Service Technicians perform mandatory vehicle inspections and travel to and from their assigned clients "off the clock" because PepsiCo requires them to do so.

90.     Indeed, as a condition of their employment, PepsiCo requires Giacomo and its other Hourly Service Technicians to sign Vehicle Agreements that mandate them to perform this pre- and post-shift work "off the clock" without pay:

1. Technician is required to start their day at their first account at their designated shift time
2. Technician is required to end their day at their last account at their designated shift s time.
3. All time travelling to the first customer call, or home from the last customer call is u time.
4. Vehicle is to be used for company business only (No personal use).
5. Non PepsiCo employees are never allowed in the vehicle as a driver or passenger un approved by management.
6. Vehicle is to be parked and secured at home address when not in use for company business at all times.
7. Vehicle will be brought to the designated facility when technician is off work for extended periods (i.e. vacations, FMLA, etc.).
    a. Technicians are responsible for their own transportation to and from the facili
    b. Full Service Keys must be returned to Supervisor during these extended leave periods
        i. Technician is responsible for securing FSV keys in their home overnigh
8. Vehicles must be kept neat and organized at all times.
9. Technician is required to maintain an average of 8 calls per day minimum.
10. Technician must maintain acceptable KPI metrics at all times.

91.   In fact, per PepsiCo's company-wide policies, Giacomo and the other Hourly Service Technicians must record when they complete their pre- and post-shift vehicle inspections through PepsiCo's "E3" system every shift they work.

92.   Further, PepsiCo closely monitors and tracks Giacomo and the other Hourly Service Technicians work time and locations via its company-wide "GANTT" and "E3" systems, as well as PepsiCo's "PCB app" to ensure they meet PepsiCo's strict productivity requirements:



Today's Gantt chart shows three technicians, two of whom are Homed Based and have shortened their workday today while having one more account that needed service with a shift end time of 630pm.

Here is the breakdown:

Technician 1: 5 calls last call 445pm shift ends 630pm
Technician 2: 5 calls last call 430pm shift ends 630pm
Technician 3: 4 calls last call 430pm shift ends 630pm

All technicians are expected to work a full day. That's why you are here to service the customer, not on your terms. Please be prepared to account for any idle time non-worked.

I will review your End-of-Day (EOD) reports to assess your productivity and if any overtime was worked. Be prepared to explain why you concluded your workload early before the scheduled work shift.

Eddie

93.     Likewise, PepsiCo installs dash cameras in Giacomo's and the other Hourly Service Technicians' company-issued vehicles to monitor all their activities.

94.     And Giacomo and other Hourly Service Technicians repeatedly complained to their supervisors and/or PepsiCo management about being forced to work "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

95.     In fact, these repeated complaints resulted in PepsiCo changing its "client to client" policy (with respect to pre-shift vehicle inspections and travel time, only) in 2023.

96.     PepsiCo fails to exercise its duty as Giacomo's and the other Hourly Service Technicians' employer to ensure these employees are not performing work that PepsiCo does not want performed "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

97.     Thus, PepsiCo requested, suffered, permitted, or allowed Giacomo and its other Hourly Service Technicians to work "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

98.     Despite accepting the benefits, PepsiCo does not pay Giacomo and its other Hourly Service Technicians for the time they spend performing this compensable work "off the clock."

99.     Thus, under PepsiCo's illegal "client to client" policy, Giacomo and the other Hourly Service Technicians are denied overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned client and after they leave their last assigned client during workweeks in which they work over 40 hours in violation of the FLSA and IMWL.

100.    Likewise, under PepsiCo's illegal "client to client" policy, Giacomo and the other Hourly Service Technicians are denied earned wages (at their agreed hourly rates) for the time they spend performing compensable work "off the clock" before they arrive at their first assigned client and after they leave their last assigned client during workweeks in which they work under 40 hours in violation of the IWPCA.

14

CLASS & COLLECTIVE ACTION ALLEGATIONS

101.    Giacomo incorporates all other paragraphs by reference.

102.    Like Giacomo, the other Hourly Service Technicians were victimized by PepsiCo's illegal "client to client" policy.

103.    Other Hourly Service Technicians worked with Giacomo and indicated they were paid in the same manner, performed similar work, and were subject to PepsiCo's same illegal "client to client" policy.

104.    Based on his experience with PepsiCo, Giacomo is aware PepsiCo's illegal "client to client" policy was imposed on the other Hourly Service Technicians.

105.    The Hourly Service Technicians are similarly situated in the most relevant respects.

106.    Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a week.

107.    Therefore, the specific job titles or precise job locations of the various Hourly Service Technicians do not prevent class or collective treatment.

108.    Rather, the Hourly Service Technicians are held together by PepsiCo's uniform "client to client" policy, which systematically deprived Giacomo and the other Hourly Service Technicians of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

109.    PepsiCo's failure to pay earned wages and overtime wages as required by the FLSA and Illinois wage laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Service Technicians.

110.    PepsiCo's records reflect the number of hours the Hourly Service Technicians recorded they worked each week.

111.    PepsiCo's records also show the number of hours the Hourly Service Technicians actually worked each week.

112.    The back wages owed to Giacomo and the other Hourly Service Technicians can therefore be calculated using the same formula applied to the same records.

113.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to PepsiCo's records, and there is no detraction from the common nucleus of liability facts.

114.    Therefore, the issue of damages does not preclude class or collective treatment.

115.    Giacomo's experiences are therefore typical of the experiences of the other Hourly Service Technicians.

116.    Giacomo has no interest contrary to, or in conflict with, the other Hourly Service Technicians.

117.    Like each Hourly Service Technician, Giacomo has an interest in obtaining the unpaid wages owed to them under federal and Illinois law.

118.    Giacomo and his counsel will fairly and adequately protect the interests of the other Hourly Service Technicians.

119.    Giacomo retained counsel with significant experience in complex class and collective action litigation.

120.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

121.    Absent this class and collective action, many Hourly Service Technicians likely will not obtain redress for their injuries, and PepsiCo will reap the unjust benefits of violating the FLSA and Illinois wage laws.

122.    Further, even if some of the Hourly Service Technicians could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

123.    Indeed, the multiplicity of actions would create a hardship for the Hourly Service Technicians, the Court, and PepsiCo.

124.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Service Technicians' claims.

125.    The questions of law and fact that are common to each Hourly Service Technician predominate over any questions affecting solely the individual members.

126.    Among the common questions of law and fact are:

    a.    Whether PepsiCo engaged in a policy and practice of prohibiting its Hourly Service Technicians from clocking in for their shifts until they arrived at their first assigned client;

    b.    Whether PepsiCo engaged in a policy and practice of requiring its Hourly Service Technicians to clock out for their shifts once they left their last assigned client;

    c.    Whether PepsiCo engaged in a policy and practice of requiring its Hourly Service Technicians to perform mandatory vehicle inspections "off the clock" before they drive to their first assigned client and, again, when they return home (or to their designated PepsiCo facility) after driving from their last assigned client;

    d.    Whether PepsiCo knew, or had reason to know, the Hourly Service Technicians were requested, suffered, permitted, or allowed to work "off the clock" before they arrive at their first assigned client and after

they leave their last assigned client in violation of the FLSA and Illinois wage laws;

e.   Whether PepsiCo's "client to client" policy deprived the Hourly Service Technicians of pay for time worked before they arrive at their first assigned client and after they leave their last assigned client in violation of the FLSA and Illinois wage laws;

f.   Whether PepsiCo's "client to client" policy deprived the Hourly Service Technicians of overtime pay for all overtime hours worked in violation of the FLSA and IMWL;

g.   Whether PepsiCo's "client to client" policy deprived the Hourly Service Technicians of earned wages for all hours worked in violation of the IWPCA;

h.   Whether PepsiCo's decision to not pay the Hourly Service Technicians all their earned wages for all hours worked, including those worked "off the clock," was made in good faith;

i.   Whether PepsiCo's decision not to pay the Hourly Service Technicians overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith; and

j.   Whether PepsiCo's violations were willful.

127.   Giacomo knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

128.   As part of its regular business practices, PepsiCo intentionally, willfully, and repeatedly violated the FLSA and Illinois wage laws with respect to Giacomo and the other Hourly Service Technicians.

129.    PepsiCo's illegal "client to client" policy deprived Giacomo and the other Hourly Service Technicians of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under federal and Illinois law.

130.    There are many similarly situated Hourly Service Technicians who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

131.    The Hourly Service Technicians are known to PepsiCo and can be readily identified through PepsiCo's business and personnel records.

### PEPSICO'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND ILLINOIS WAGE LAWS

132.    Giacomo incorporates all other paragraphs by reference.

133.    PepsiCo knew it was subject to the FLSA's and IMWL's respective overtime provisions.

134.    PepsiCo knew the FLSA and IMWL required it to pay non-exempt employees, including Giacomo and the other Hourly Service Technicians, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

135.    PepsiCo also knew it was subject to the IWPCA.

136.    PepsiCo knew the IWPCA required it to pay employees, including Giacomo and the other Hourly Service Technicians, all wages earned (at their agreed hourly rates) for all hours of work performed.

137.    PepsiCo knew Giacomo and the other Hourly Service Technicians were non-exempt employees entitled to overtime pay.

138.    PepsiCo knew it paid Giacomo and the other Hourly Service Technicians on an hourly basis.

139.     PepsiCo knew Giacomo and each Hourly Service Technicians worked over 40 hours in at least one workweek during the three years before this Complaint was filed because PepsiCo required these employees to record their hours worked using its timeclock system.

140.     PepsiCo knew the FLSA, IMWL, and IWPCA required it to pay employees, including Giacomo and the other Hourly Service Technicians, for all hours these employees performed compensable work.

141.     PepsiCo knew that, as Giacomo's and the other Hourly Service Technicians' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that PepsiCo did not want performed.

142.     PepsiCo knew that, prior to 2023, it prohibited Giacomo and the other Hourly Service Technicians from clocking in for their shifts until they arrived at their first assigned client.

143.     Nonetheless, prior to 2023, PepsiCo required Giacomo and the other Hourly Service Technicians to complete mandatory vehicle inspections "off the clock" before driving to their first assigned client.

144.     Likewise, PepsiCo knew it required Giacomo and the other Hourly Service Technicians to clock out for their shifts when they left their last assigned client.

145.     Nonetheless, PepsiCo required Giacomo and the other Hourly Service Technicians to complete mandatory vehicle inspections "off the clock" after they returned to their homes (or their designated PepsiCo facilities) after driving from their last assigned client.

146.     PepsiCo knew it required Giacomo and the other Hourly Service Technicians to sign vehicle agreements that required these employees to perform pre- and post-shift vehicle inspections every shift.

147.    PepsiCo knew it required Giacomo and the other Hourly Service Technicians to report to PepsiCo that they had completed their mandatory pre- and post-shift vehicle inspections every shift.

148.    PepsiCo knew it controlled Giacomo's and the other Hourly Service Technicians' "off the clock" vehicle inspections.

149.    PepsiCo knew Giacomo's and the other Hourly Service Technicians' "off the clock" vehicle inspections were undertaken for PepsiCo's predominant benefit.

150.    PepsiCo knew Giacomo's and the other Hourly Service Technicians' "off the clock" vehicle inspections were necessary to the principal work these employees performed as PepsiCo Service Technicians.

151.    PepsiCo knew Giacomo's and the other Hourly Service Technicians' mandatory "off the clock" vehicle inspections were integral and indispensable to these employees' work as PepsiCo Service Technicians.

152.    PepsiCo knew that, prior to 2023, it required Giacomo and the other Hourly Service Technicians to drive to their first assigned client (after completing their mandatory vehicle inspection) "off the clock."

153.    Likewise, PepsiCo knew it required Giacomo and the other Hourly Service Technicians to drive home (or to their designated PepsiCo facility) from their last assigned client (before completing their mandatory EOD vehicle inspection) "off the clock."

154.    PepsiCo knew Giacomo's and the other Hourly Service Technicians' "off the clock" travel time to and from their assigned clients was undertaken for PepsiCo's predominant benefit.

155.    PepsiCo knew Giacomo's and the other Hourly Service Technicians' "off the clock" travel time to and from their assigned clients was necessary to the principal work these employees performed as PepsiCo Service Technicians.

156.     PepsiCo knew Giacomo's and the other Hourly Service Technicians' "off the clock" travel time to and from their assigned clients was integral and indispensable to these employees' work as PepsiCo Service Technicians.

157.     PepsiCo knew Giacomo and the other Hourly Service Technicians performed work "off the clock" (like their mandatory vehicle inspections and client travel time) before they arrived at their first assigned client and after they left their last assigned client.

158.     Indeed, PepsiCo knew Giacomo and the other Hourly Service Technicians complained to PepsiCo's management, HR, and/or their supervisors about being forced to work "off the clock" before they arrived at their first assigned client and after they left their last assigned client.

159.     Thus, PepsiCo knew it requested, suffered, permitted, or allowed Giacomo and the other Hourly Service Technicians to work "off the clock" before they arrived at their first assigned client and after they left their last assigned client.

160.     In other words, PepsiCo knew, should have known, or recklessly disregarded whether Giacomo and the other the Hourly Service Technicians performed compensable work "off the clock" before they arrived at their first assigned client and after they left their last assigned client.

161.     Nonetheless, PepsiCo did not pay Giacomo and the other Hourly Service Technicians for the work they performed "off the clock" before they arrived at their first assigned client and after they left their last assigned client.

162.     Thus, PepsiCo knew, should have known, or recklessly disregarded whether it failed to pay Giacomo and the other Hourly Service Technicians for all the hours they performed compensable work.

163.     PepsiCo changed its policy in 2023 and began permitting Giacomo and the other Hourly Service Technicians to clock in for their shifts once they began conducting their mandatory pre-shift vehicle inspections.

164.    Nonetheless, PepsiCo continues to require Giacomo and the other Hourly Service Technicians to clock out when they leave their last assigned client (before they complete their mandatory EOD vehicle inspections).

165.    PepsiCo's decision to prohibit Giacomo and the other Hourly Service Technicians from clocking in for their shifts until they arrived at their first assigned client was neither reasonable, nor was it made in good faith.

166.    Likewise, PepsiCo's decision to require Giacomo and the other Hourly Service Technicians to clock out for their shifts when they leave their last assigned client was neither reasonable, nor was it made in good faith.

167.    PepsiCo's failure to pay Giacomo and the other Hourly Service Technicians overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

168.    Likewise, PepsiCo's failure to pay Giacomo and the other Hourly Service Technicians all their earned wages (at their agreed hourly rates) for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages (at their agreed hourly rates) for all hours worked made in good faith.

169.    PepsiCo knowingly, willfully, and/or in reckless disregard carried out its illegal "client to client" policy that deprived Giacomo and the other Hourly Service Technicians of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek in violation of the FLSA, IMWL, and IWPCA.

170.    PepsiCo knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA and Illinois wage laws.

171.    Indeed, PepsiCo and its affiliated entities have been sued previously by employees for failing to pay wages in violation of the FLSA and analogous state wage and hour laws, including for

the same or similar illegal "off the clock" practices and policies that are the subject of this lawsuit. *See, e.g., Marchione, et al. v. PepsiCo, Inc., et al.*, No. 8:11-CV-02606-JSM-TGW (M.D. Fla.).

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
PURSUANT TO 29 U.S.C. §§ 201, *ET SEQ.*
(FLSA COLLECTIVE)**

172.    Giacomo incorporates all other paragraphs by reference.

173.    Giacomo brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

174.    PepsiCo violated, and is violating, the FLSA by employing non-exempt employees (Giacomo and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

175.    PepsiCo's unlawful conduct harmed Giacomo and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

176.    Accordingly, PepsiCo owes Giacomo and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

177.    Because PepsiCo knew, or showed reckless disregard for whether, its policies violated the FLSA, PepsiCo owes these wages for at least the past 3 years.

178.    PepsiCo is also liable to Giacomo and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

179.    Finally, Giacomo and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>C</u>OUNT II

FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
PURSUANT TO 820 ILCS 105/1, *ET SEQ.*
(IMWL CLASS)

180.    Giacomo incorporates all other paragraphs by reference.

181.    Giacomo brings his IMWL claim on behalf of himself and the other IMWL Class Members pursuant to FED. R. CIV. P. 23.

182.    PepsiCo's conduct violates the IMWL (820 ILCS 105/1, *et seq.*).

183.    At all relevant times, PepsiCo was subject to the IMWL because PepsiCo was (and is) an "employer" within the meaning of the IMWL.

184.    At all relevant times, PepsiCo employed Giacomo and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL.

185.    The IMWL requires employers, like PepsiCo, to pay non-exempt employees, including Giacomo and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

186.    Giacomo and the other IMWL Class Members are entitled to overtime pay under the IMWL.

187.    PepsiCo violated, and is violating, the IMWL by failing to pay Giacomo and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked "off the clock" before they arrive at their first assigned client and after they leave their last assigned client. *See* 820 ILCS 105/4a.

188.    PepsiCo's unlawful conduct harmed Giacomo and the other IMWL Class Members by depriving them of the overtime wages they are owed.

189.    Accordingly, Giacomo and the other IMWL Class Members are entitled to recover their unpaid overtime wages owed from the 3 years prior to the filing of this Complaint, treble

damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT III

### FAILURE TO PAY ALL WAGES UNDER THE IWPCA PURSUANT TO 820 ILCS 115/1, *ET SEQ.* (IWPCA CLASS)

190.    Giacomo incorporates all other paragraphs by reference.

191.    Giacomo brings his IWPCA claim on behalf of himself and the other IWPCA Class Members pursuant to FED. R. CIV. P. 23.

192.    PepsiCo's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

193.    At all relevant times, PepsiCo was subject to the IWPCA because PepsiCo was (and is) an "employer" within the meaning of the IWPCA.

194.    At all relevant times, PepsiCo employed Giacomo and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

195.    The IWPCA requires employers, like PepsiCo, to pay employees, including Giacomo and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

196.    During the course of their employment, PepsiCo agreed to pay Giacomo and each IWPCA Class Member an hourly rate for all the hours of work they performed.

197.    Giacomo and each IWPCA Class Member accepted PepsiCo's offer.

198.    But during the course of their employment, PepsiCo failed to pay Giacomo and the other IWPCA Class Members for all the time they worked at the rates PepsiCo agreed to pay them because PepsiCo failed to include time these employees worked "off the clock" before they arrived at their first assigned client and after they left their last assigned client in their total number of hours worked in a given workweek.

199.    PepsiCo violated, and is violating, the IWPCA by failing to pay Giacomo and the other IWPCA Class Members all their earned wages (at the rates PepsiCo agreed to pay them) for all the hours of work they perform for PepsiCo's benefit, including the work they perform "off the clock" before they arrive at their first assigned client and after they leave their last assigned client.

200.    PepsiCo's unlawful conduct harmed Giacomo and the other IWPCA Class Members by depriving them of the earned wages they earned and are owed.

201.    Accordingly, Giacomo and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates) owed from the 10 years prior to the filing of this Complaint, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

202.    Giacomo demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Giacomo, individually and on behalf of the other Hourly Service Technicians, seeks the following relief:

a.      An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.      An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.      An Order appointing Giacomo and his counsel to represent the interests of the Hourly Service Technicians;

d.      An Order finding PepsiCo liable to Giacomo and the other FLSA Collective Members for all unpaid overtime wages owed under the

FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding PepsiCo liable to Giacomo and the other IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f.      An Order finding PepsiCo liable to Giacomo and the other IWPCA Class Members for unpaid "straight time" wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

g.      Judgment awarding Giacomo and the other Hourly Service Technicians all unpaid wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties available under the FLSA, IMWL, and IWPCA;

h.      An Injunction precluding PepsiCo from violating the IWPCA;

i.      An Order awarding attorneys' fees, costs, and expenses;

j.      Pre- and post-judgment interest at the highest applicable rates; and

k.      Such other and further relief as may be necessary and appropriate.

Dated: December 14, 2023

Respectfully submitted,

PELTON GRAHAM LLC

By: _R. P. R_

Brent E. Pelton
111 Broadway, Suite 1503
New York, New York 10006
Phone: (212) 385-9700

Michael A. Josephson*
Andrew W. Dunlap*
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:     (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:     (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming

ATTORNEYS FOR GIACOMO AND
THE HOURLY SERVICE TECHNICIANS

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: _Scott A Giacomo_____

1.  I hereby consent to make a claim against _PepsiCo_____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against _PepsiCo_____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Scott A Giacomo (Oct 21, 2023 16:46 CDT)_____   Date Signed: _Oct 21, 2023_____